UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 19-22689-CIV-COOKE/GOODMAN

KAREN BERENGUELA-ALVARADO,

      Plaintiff,

v.

ERIC CASTANOS,

      Defendant.

_____/

**REPORT AND RECOMMENDATIONS ON MOTIONS FOR
ATTORNEY'S FEES AND COSTS**

Petitioner Plaintiff Karen Berenguela-Alvarado ("Petitioner"), a resident of Chile,

initiated this action against her child's father, Eric Castanos ("Respondent"), after the

child visited Respondent in the United States. After revoking her consent for the child

to remain in the United States, Petitioner filed a Verified Petition for Return of Child

under the Hague Convention on the Civil Aspects of International Child Abduction (the

"Convention"), implemented in the United States through the International Child

Abduction Remedies Act ("ICARA"). 22 U.S.C. §§ 9001 *et seq*.

The District Court first entered an Order denying Petitioner's Petition for Return

of Child. [ECF No. 37]. Petitioner appealed the Order [ECF No. 38], and the Eleventh

Circuit entered a Mandate vacating and remanding the District Court's Order of denial. [ECF No. 54].

Following the Mandate, the District Court held a status conference and ordered additional briefing from the parties, particularly on the issue of Petitioner's alleged consent. [ECF Nos. 55; 58]. Following the conference and additional briefing, the District Court entered an Order on Remand, finding in favor of Petitioner and granting the Petition for Return of Child. [ECF No. 70]. Respondent appealed the District Court's Order on Remand [ECF No. 86], which was subsequently affirmed by the Eleventh Circuit. [ECF No. 93]. After the appeal process and multiple emergency orders to stay the case filed by Respondent, the child was returned to Petitioner in Chile. [ECF Nos. 71-83].

Following the successful return of the child to Petitioner, Petitioner filed a Motion for Attorney's Fees Against Respondent in the Eleventh Circuit arguing that she is the prevailing party, and that under ICARA there is a mandatory, rebuttable fee-shifting provision in favor of an attorney's fee award to a prevailing party. The Eleventh Circuit transferred the motion to the District Court for its consideration. [ECF Nos. 88; 89]. Petitioner filed a second Motion for Attorney's Fees and Costs, which was also transferred to the District Court. [ECF Nos. 91; 92]. Respondent filed a response to the two fees motions. [ECF No. 101]. United States District Judge Marcia G. Cooke referred the two motions to the Undersigned for a Report and Recommendations. [ECF No. 94].

2

In total, Petitioner requests $15,315 in attorney's fees and $2,033.73 in costs ($10,170 in fees and $1,930.78 in costs in the first motion; and $5,145 in fees and $102.95 in costs in the second motion). [ECF Nos. 88, pp. 6, 16-17; 91, pp. 6, 8-9]. Plaintiff's attorney's billing statements are attached to the two motions. *Id.*

For the reasons stated below, the Undersigned **respectfully recommends** that the District Court **grant in part** and **deny in part** Plaintiff's motion and award Plaintiff **$13,650** in attorney's fees (reduced from $15,315) and **$1,930.78** in taxable costs (reduced from $2,033.73).

## I.     BACKGROUND

Petitioner, a resident of Chile, sent her then six-year-old daughter to visit Respondent, the child's father, in the United States. Respondent recognized the child as his daughter when she was three-months old and has provided financial support for her ever since. Respondent has also kept in regular contact with the child, visiting her multiple times each year.

In February 2018, Petitioner agreed to let the child visit Respondent in the United States for two months. At the end of this period, Respondent returned the child to her mother in Chile. The child visited Respondent in the United States again in December 2018, and, during this trip, Petitioner authorized the child to visit Respondent from December 30, 2018 until the end of March 2019 (the "Travel Authorization"). [ECF No.

1-1, pp. 17-23]. Though the Travel Authorization extended through March, Respondent purchased a ticket for the child to return to Chile on February 28, 2019.

In early February 2019, Respondent and Petitioner began discussing the possibility of the child permanently staying in the United States with Respondent. Arguing that the child would have a better life in the United States, Respondent tried to convince Petitioner to consent to his custody of the child. Respondent sought the help of Doris Baquero, an employee of the Florida Department of Juvenile Justice and commissioned notary public in the State of Florida. Baquero sent a letter to Petitioner to sign (the "Consent Letter"). In relevant part, the letter states:

> I, Karen Edith Berenguela Alvarado, is [sic] giving consent to my daughter, [EICB], to reside with her father, Eric Castanos, in the United States. [EICB] will be residing the United States for the purpose of improving her quality of life, education, physical health and nutrition…[EICB] will visit her maternal family in Chile the months of summer break from school in the United States. Karen Edith Berenguela Alvarado is in full agreement with this letter and her signature confirms her knowledge and consent.

*Id.* at pp. 65-66.

In addition to sending the child to Chile for summer break, Respondent agreed to pay for Petitioner to come to the United States once a year and spend a week with the child. Respondent also would also forego any child support owed to him by Petitioner if she agreed to this arrangement. Nevertheless, Petitioner testified that Respondent threatened that he would not bring the child back to Chile unless Petitioner consented to this arrangement.

4

Petitioner eventually agreed to the arrangement. To effectuate their agreement, Petitioner needed to do two things: (1) renew the child's American passport, which was reissued on February 8, 2019; and (2) notarize the Consent Letter. Baquero sent Petitioner money so that she could get the letter notarized at the American embassy. Petitioner made two appointments at the embassy but never went to the scheduled appointments. Instead, on February 25, 2019, Petitioner emailed Baquero saying: "Doris, good afternoon, I appreciate everything, but I changed my mind." [ECF No. 1-1, pp. 88].

When the Travel Authorization expired in March 2019, Petitioner filed her petition for the return of the child under the Hague Convention.

The District Court held a two-day evidentiary hearing and initially denied the petition, concluding that Petitioner proved the child was wrongfully retained but that she consented to the wrongful retention. Petitioner appealed the District Court's Order of denial to the Eleventh Circuit, which entered a Mandate reversing and remanding the District Court's Order.

In the April 21, 2020 Order on Remand, the District Court granted Petitioner's petition for the return of the child. On April 24, 2020, after Respondent filed numerous motions to stay the case, the child was exchanged back to Petitioner with aid of the U.S. Marshals.

Respondent appealed the District Court's April 21, 2020 Order on Remand to the Eleventh Circuit; however, the Court affirmed the order. [ECF No. 93]. After the District

Court's Order was affirmed, Petitioner filed a Motion for Attorney's Fees Against Respondent in the Eleventh Circuit, arguing entitlement to fees under ICARA as the prevailing party. [ECF Nos. 88; 89]. Petitioner filed a second Motion for Attorney's Fees and Costs. [ECF Nos. 91; 92]. Respondent filed a response to the two fees motions. [ECF No. 101].

II.     ICARA

With respect to the award of attorney's fees and costs, ICARA provides, in pertinent part, as follows:

> Any Court ordering the return of a child pursuant to an action brought under section 11603 of this title *shall* order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of the proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such an award would be clearly inappropriate.

42 U.S.C. § 11607(b)(3) (emphasis added).

"An award of fees and costs serves two purposes: (1) 'to restore the applicant to the financial position he or she would have been in had there been no removal or retention' and (2) 'to deter such removal or retention.'" *Neves v. Neves*, 637 F. Supp. 2d 322, 339 (W.D.N.C. 2009) (citing Hague International Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. 10494-01, 10511 (Mar. 26, 1986)).

"ICARA goes beyond the discretion bestowed by the Hague Convention and includes a *mandatory obligation* to impose necessary expenses, unless the respondent

establishes that to do so would be ***clearly inappropriate***. This reflects an affirmative intention on the part of Congress to impose fees in favor of the petitioner and against the respondent in return actions filed under this statute. Accordingly, the prevailing petitioner is presumptively entitled to necessary costs and the statute shifts the burden of proof onto a losing respondent to show why an award of necessary expenses would be 'clearly inappropriate.'" *Salazar v. Maimon*, 750 F.3d 514, 519-20 (5th Cir. 2014) (emphasis added) (internal citation omitted); *see also Rath v. Marcoski*, 898 F.3d 1306, 1311 (11th Cir. 2018) ("We read the statutory text as creating a strong presumption in favor of fee-shifting, rebuttable only by a showing from the losing respondent that an award of attorney's fees, costs and expenses would be clearly inappropriate.").

In his Opposition to the fees motions, Respondent's primary argument is that it would be "clearly inappropriate" to award Petitioner fees as the prevailing party because "the District Court originally found, regarding the Father's intent, that he was acting in 'good faith', and that the Petitioner Mother *consented to* the minor child's retention by her Father in the United States." [ECF No. 101, p. 4].

Respondent's sole focus is the District Court's initial finding that Petitioner had consented; however, this finding was vacated. In its Mandate, the Eleventh Circuit held that Petitioner proved the three necessary elements to establish a *prima facie* case of wrongful retention of the child by Respondent in the United States. [ECF No. 54, p. 15]. The Court held that the District Court made a factual error because Respondent "*never*

7

actually denied threatening Berenguela-Alvarado. The district court therefore clearly erred in relying on non-existent testimony as a basis for holding that Castanos had shown that Berenguela-Alvarado had consented to [the child's] retention in the United States. . . . To be clear, none of the testimony that Castanos *did* give could be interpreted as constituting a denial that he threatened Berenguela-Alvarado." *Id.* at pp. 16-17 (emphasis in original).

The Eleventh Circuit also held that the District Court made a legal error in shifting the burden back to Petitioner on the consent issue, "erroneously treating her allegation that she signed the consent letter as a result of Castanos's threat as a formal allegation of 'duress' that she had to prove by a preponderance of the evidence." *Id.* at p. 18.

The Mandate delineates the other subjective intent evidence examined by the District Court and finds that the District Court's interpretation of Petitioner's subjective intent and consent was tainted.

First, the renewal of the child's passport was necessary in order for the child to be returned to Chile, as planned in March. Second, while Petitioner made two appointments at the embassy, it is possible that she skipped the appointments to stall for time to get the child back in March, when the visit expired. Third, when analyzing the email from Petitioner to Baquero stating that she had changed her mind, the Court found that Petitioner's "lone comment in an e-mail to a third party about changing her

8

mind can't overcome her clear testimony, particularly in light of Berenguela-Alvarado's insistence that she was effectively trying to string Castanos and Baquero along to stall for time." *Id.* at p. 21.

Finally, the potential that Respondent threatened Petitioner vitiates her consent, and the District Court's own order demonstrates that "there is good reason to believe that if it had correctly concluded that Castanos's threat was likewise undisputed, it would have decided the case differently." *Id.* at p. 22.

After the Eleventh Circuit's Mandate, the District Court entered its Order on Remand, granting the Petition for Return of Child. In its Order, the District Court determined that Petitioner "met her burden to establish by a preponderance of the evidence that [the child] was wrongfully retained" and that Respondent failed to establish an affirmative defense. [ECF No. 70, p. 3]. Indeed, the Court held that "Respondent did not present any evidence related to his consent defense. . . . Moreover, Petitioner testified that she signed the consent letter 'under threat' that if she did not sign she would never see her daughter again." *Id.* at p. 8.

Contrary to Respondent's argument, the Eleventh Circuit's thorough analysis, coupled with the unequivocal Order on Remand specifying that Petitioner did <u>not</u> consent to Respondent's wrongful retention of the child, do not support a finding that under the "circumstances . . . it would be clearly inappropriate for there to be a 'fee-shift' to the respondent Father." [ECF No. 101, p. 4].

The Undersigned finds that the purpose of ICARA is upheld here by an award of fees and costs to Petitioner as the prevailing party in securing the return of the child. Respondent has failed to establish that the award of fees and costs to Petitioner for her efforts to return the child is "clearly inappropriate." *See, e.g., Neves,* 637 F. Supp. 2d at 339; *Salazar,* 750 F.3d at 519-20; *Rath,* 898 F.3d at 1311.

## III.    REQUEST FOR ATTORNEY'S FEES

A prevailing party is not ordinarily entitled to recover attorney's fees from its opponent. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 247 (1975). However, the ICARA includes a mandatory obligation to impose necessary expenses, unless the respondent establishes that to do so would be clearly inappropriate. *See* 42 U.S.C. § 11607(b)(3).

Plaintiff is the prevailing party because the District Court granted her Verified Petition for Return of Child, which was affirmed by the Eleventh Circuit. [ECF Nos. 1; 70; 88]. Plaintiff now requests $15,315 in total in attorney's fees. [ECF Nos. 88; 89; 91; 92]. Plaintiff's counsel, Aubrey Quinton Webb, charged between $300 and $350 per hour for a total of 48.6 hours. *Id.*

The Court must determine whether the requested amount of fees is reasonable. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983). This amount is typically

referred to as the "lodestar." *Thornton v. Wolpoff & Abramson, L.L.P.*, 312 F. App'x 161, 163-64 (11th Cir. 2008).

The resulting fee carries a presumption that it is reasonable. *Blum v. Stenson*, 465 U.S. 886, 897 (1984). This lodestar amount may then be adjusted upward or downward based upon other considerations. *Hensley*, 461 U.S. at 433-37. The applicant bears the burden of documenting the reasonableness of the hours expended and the hourly rate. *A.C.L.U. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999).

### A.    Reasonable Hours Expended

The Court must evaluate the reasonableness of the total hours expended by Plaintiff's counsel. In doing so, the Court should exclude compensation for hours that are "excessive, redundant or otherwise unnecessary." *Norman v. Hous. Auth. of the City of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988) (quoting *Hensley*, 461 U.S. at 434). Further, the Court must omit those hours that would be unreasonable to bill a client "irrespective of the skill, reputation, or experience of counsel." *Id.*

Plaintiff is seeking 33.9 hours for attorney Webb's work in handling the petition and Petitioner's appeal, between August 29, 2019 and January 31, 2020, and 14.7 for Webb's work in handling the Respondent's appeal, between April 29, 2020 and July 7, 2020, totaling 48.6 hours. [ECF Nos. 88; 89; 91; 92]. The Undersigned finds that the vast majority of the billing entries are reasonable when considering the complicated nature of this action and the two appeals.

But after reviewing counsel's billing records, there are a few entries that are excessive and/or vague. Specifically, in the first motion for fees, the entries for September 3rd for filing and on September 5th for conferring regarding transcript costs are administrative tasks. [ECF No. 88, p. 17]; *see Morais v. Rhino Holdings One, Inc.*, No. 17-CV-80001, ECF No. 35, pp. 4-5 n.1 (S.D. Fla. June 2, 2017) (reducing counsel's billing for routine matters, such as motions for extension of time); *Miller v. Kenworth of Dothan, Inc.*, 117 F. Supp. 2d 1247, 1261 (M.D. Ala. 2000) ("[A]ttorneys should not receive full compensation for performing services that should have been delegated to non-lawyers.").

And additionally, in the first motion, on September 2nd and November 12th, counsel block-billed his time entries. Vague entries, including those using block billing, may be omitted or reduced. *See Kearney v. Auto-Owners Ins. Co.*, 713 F. Supp. 2d 1369, 1379 (M.D. Fla. 2010) ("A court may eliminate or reduce an award where a time entry is excessively vague."). Because there is no way to determine the amount of time counsel spent on each of the specific tasks mentioned in the block-billed entries, the Undersigned recommends wholly eliminating the September 2nd block-billed entry for .4 and reducing the November 12th entry by .5.

Similarly, in the second motion, the Undersigned recommends reducing the June 16th entry for "[f]inal revision to Answer Brief and filed to Appellate Court" by .2 to account for counsel's block billing mixed with an administrative task. [ECF No. 91, p. 9].

12

Finally, in the second motion, the Undersigned finds that counsel inefficiently incurred time on June 8th and June 9th for "review[ing] and digest[ing] appellant's brief." *Id.* The Undersigned recommends reducing the amount of time devoted to reviewing the appellate brief from 2.6 hours to 1 hour (a reduction of 1.6 hours). *See Norman*, 836 F.2d at 1301.

Therefore, the Undersigned **recommends** that counsel's recovery for hours billed be reduced by 1.3 hours to 32.6 hours in the first motion, and reduced by 1.8 hours to 12.9 hours in the second motion (a reduction of 3.1 hours in total). The Undersigned **recommends** that the total number of hours be reduced to **45.5 hours**.

### B.      Reasonable Hourly Rate

A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by attorneys with reasonably comparable skills, experience, and reputation. *Norman*, 836 F.2d at 1299. The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with the prevailing market rates. *Id.* In determining the prevailing market rate, the Court should consider several factors, including: "the attorney's customary fee, the skill required to perform the legal services, the attorney's experience, reputation and ability, the time constraints involved, preclusion of other employment, contingency, the undesirability of the case, the attorney's relationship to the client, and awards in similar cases." *Mallory v. Harkness*, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996).

For Webb's representation, Plaintiff requests $300 per hour for the work done between August 29, 2019 and January 31, 2020, and $350 per hour for the work done between April 29, 2020 and July 7, 2020. [ECF Nos. 88, p. 16; 91, p. 8]. The Undersigned finds that the rate of $300 per hour is in line with other appellate attorneys handling complicated Hague cases. Additionally, Webb has considerable and impressive experience as an attorney since 2003. [ECF No. 88, p. 20]. During Webb's career, he worked as an assistant state attorney in Miami-Dade for four years, where he tried more than 100 cases in bench and jury trials. He also clerked for Untied States Circuit Judge Joel F. Dubina of the Eleventh Circuit. He is also an experienced appellate attorney and practices frequently in both state and federal court. *Id.*

Nevertheless, Webb does not provide any explanation for why his rate changed from $300 to $350 when handling the second appeal. The Undersigned might have approved the higher hourly rate if counsel had explained the circumstances (e.g., counsel had not raised hourly rates for five years and it was time to increase his hourly rate across the board for all cases; Petitioner had been afforded a discounted hourly rate for the first part of the case but agreed later that the discount could be removed, etc.). Without any explanation, however, the Undersigned cannot adequately assess the reasonableness of the higher hourly rate. Accordingly, the Undersigned **recommends** reducing counsel's rate in Petitioner's second motion from $350 per hour to $300 per hour.

Therefore, after weighing all the evidence submitted and the relevant factors, including awards in similar cases, Webb's experience, and the skill required to perform the work in this type of case, the Undersigned finds that the hourly rate of $300 per hour is reasonable. The Undersigned recommends that Webb's hourly rate from April 29, 2020 to July 7, 2020 (for the entries listed in the second fees motion) be reduced to $300 per hour.

### C.      Attorney's Fees Total

The Undersigned finds that Plaintiff's counsel reasonably expended 45.5 hours on this case at a reasonable rate of $300 per hour. Thus, the Undersigned **respectfully recommends** that the District Court award Petitioner **$13,650** in attorney's fees (reduced from $15,315).

## IV.      REQUEST FOR COSTS

Plaintiff seeks $2,033.73 in taxable costs, specifically: (1) $1,425.78 for the transcripts from the two-day evidentiary hearing; (2) $505 for the filing cost of filing the appeal; and (3) $102.95 for the costs associated with copying the briefs and appendices and mailing the paper documents. [ECF Nos. 88, p. 6; 91, p. 6].

Absent a federal statute, civil procedure rule, or order to the contrary, a prevailing party is entitled to an award of its costs. Fed. R. Civ. P. 54(d)(1). Costs are contemplated by ICARA. *See* 42 U.S.C. § 11607(b)(3) ("Any Court ordering the return of a child pursuant to an action brought under section 11603 of this title shall order the

respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs . . .").

The prevailing party must file a bill of costs that adheres to the guidelines outlined in Local Rule 7.3(c), which specifically references 28 U.S.C. § 1920. Under § 1920, the following costs are taxable against the losing party:

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

Although a prevailing party is entitled to taxable costs, the court can still exercise discretion in awarding the costs that § 1920 enumerates. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441–42 (1987). Nevertheless, the court is limited to taxing the costs specifically authorized by statute. *E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000) (citing *Crawford Fitting Co.*, 482 U.S. at 445).

A.     **Filing Fees**

Plaintiff first seeks to recover the $505 filing fee paid to the Clerk of the Court. This filing fee is reimbursable as it falls within the scope of taxable costs under § 1920(1). The docket contains a record that this filing fee was paid by Petitioner. [ECF

16

Nos. 38; 43]. Therefore, the Undersigned **recommends** that the $505 filing fee be awarded.

### B. Transcript Costs

Petitioner seeks to recover $1425.78 in transcript costs for the transcript of the two-day evidentiary hearing before Judge Cooke, claiming that the transcript was necessary for the appeal. [ECF No. 88, p. 6]. The transcript order information form is located on the case docket. [ECF No. 46]. The Undersigned agrees that the transcripts of the evidentiary hearing were necessary for Petitioner's appeal and that such costs are enumerated in 28 U.S.C. § 1920. *Plant Food Sys., Inc. v. Agrosource, Inc.*, No. 16-CV-80326, 2017 WL 4876214, at *3 (S.D. Fla. Mar. 31, 2017) (citing *U.S. E.E.O.C.*, 213 F.3d at 620-21) ("The Eleventh Circuit has held that costs for [ ] transcripts are generally taxable as long as the transcripts were 'necessarily obtained for use in the case.'"). Thus, the Undersigned **recommends** awarding $1425.78 in transcript costs.

### C. Printing, Copying, and Mailing Costs

Next, Petitioner seeks to recover "$102.95 in costs for the 90 lb papers, copying costs for the paper briefs, appendices, and mailing costs, which was [sic] necessary for this appeal." [ECF No. 91, p. 6]. Petitioner provides no invoices, receipts, or any records whatsoever reflecting the requested $102.95.

### i.   Printing costs

Petitioner has the burden of demonstrating how these costs were necessarily incurred in the case. *C.f. Nolasco v. AKS Cartage Corp.*, No. 17-21728-CIV, 2018 WL 4905873, at *3 (S.D. Fla. Sept. 5, 2018) (not awarding printing costs under § 1920(3) because "the plaintiff does not provide an explanation for why these printing costs were necessarily incurred in this case"); *People for Ethical Treatment of Animals, Inc. v. Miami Seaquarium & Festival Fun Parks, LLC*, No. 15-22692-CIV, 2017 WL 7513237, at *6 (S.D. Fla. May 31, 2017), *report and recommendation adopted*, No. 1:15-CV-22692-UU, 2017 WL 7411187 (S.D. Fla. July 24, 2017) (denying printing costs where no "backup documentation" was provided for the printing, only invoices for copying, and "[a]bsent supporting documentation, Defendant has failed to provide sufficient evidence for the undersigned to evaluate the printing costs"). Absent backup documentation, the Undersigned **does not recommend** awarding any claimed printing costs to Petitioner.

### ii.   Copying costs

It is not enough to claim that the copies are necessary, a party must explain *why* the copies were necessary. *See A.T.O. Golden Constr. Corp. v. Allied World Ins. Co.*, No. 17-24223-CIV, 2019 WL 2245507, at *4 (S.D. Fla. Apr. 17, 2019) ("Here, we are unconvinced that Plaintiff is entitled to the full amount of copying costs requested because Plaintiff never articulates how each category of documents were used or intended to be used."); *see also Cullens v. Georgia Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994) ("The court

18

did not err in disallowing the photocopying costs. Plaintiffs did not present required evidence regarding the documents copied including their use or intended use."). Absent backup documentation, the Undersigned **does not recommend** awarding any claimed copying costs to Petitioner.

### iii.    Mailing costs

Similarly, without any backup documentation, the Undersigned **does not recommend** awarding any claimed mailing costs to Petitioner. *See Ducks Unlimited, Inc. v. Boondux, LLC*, No. 2:14-CV-2885-SHM-TMP, 2018 WL 1249912, at *11 (W.D. Tenn. Mar. 9, 2018) ("Defendants provide no invoices, receipts, or other supporting documentation to establish that they have incurred $402.77 for shipping products bearing the Boondux Logo through USPS or UPS. Without documentation, it is unclear how that amount was calculated. Defendants have failed to prove they are entitled to $402.77 in shipping costs for products.").

### D.    Costs in Total

For the reasons explained above, the Undersigned **recommends** that the District Court award Petitioner **$1,930.78** in costs (reduced from $2,033.73) for the appellate filing fee and the transcript costs.

## V.    CONCLUSION

The Undersigned **respectfully recommends** that the District Court **grant in part** and **deny in part** Petitioner's two motions for attorney's fees and costs and award

19

Petitioner **$13,650** in attorney's fees (reduced from $15,315) and **$1,930.78** in taxable costs (reduced from $2,033.73).

## VI.     OBJECTIONS

The parties will have 14 days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within 7 days of the objection. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, December 8, 2020.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Marcia G. Cooke
All Counsel of Record